

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
03/23/2018

| | | |
|---|---|---|
| IN RE: § § § § § § § § | | CASE NO. 17-32295-H4-13 |
| LEONARD SHAWN KELLY AND TABITHA RENEE KELLY, | | |
| Debtors. | | |
| MARY A.V. DE LA ROSA, § § § § § § § § § § § § § | | |
| Plaintiff, | | |
| v. | | ADVERSARY NO. 17-03320 |
| TABITHA RENEE KELLY, formerly known as, TABITHA R. MILLER, | | |
| Defendant. | | |

**MEMORANDUM OPINION REGARDING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON HER CLAIM UNDER 11 U.S.C. § 523(a)(8)(A)(ii) THAT THE DEBT OWED TO HER BY THE DEBTOR IS NONDISCHARGEABLE**
[Adv. Docket No. 9]

### I. FACTUAL AND PROCEDURAL BACKGROUND

On or about December 4, 2002, Tabitha Renee Kelly ("Defendant") executed a promissory note (the "Note") for a College Access Loan payable to the Texas Higher Education Coordinating Board ("THECB"). [Adv. Doc. No. 1, ¶ 8, p. 2 of 6]. Defendant promised to pay the sum of $6,292.00, plus interest on the unpaid balance until paid in full at the rate of 7.5% per annum simple interest. [Adv. Doc. No. 1, ¶ 8, p. 2 of 6]. The specific purpose of the Note was for the Defendant to pursue higher education. [Adv. Doc. No. 1, ¶ 9, p. 3 of 6].

On the Note, Mary A.V. De La Rosa ("Plaintiff") signed her name as the guarantor, making her responsible for all deficiencies if the Defendant defaulted in the payment. [Adv. Doc. No. 1, ¶ 12, p. 3 of 6]. Subsequently, the Defendant defaulted in the payment of the Note,

1

and the State of Texas, through THECB, sued the Plaintiff, as guarantor, on May 26, 2016, for the balance of the Note in Cause #J5-CV-16-242005; *The State of Texas v. Mary Delarosa aka Mary A.V. Delarosa*, in the Justice of the Peace Court, Precinct 5, Travis County, Texas (the "State Court Lawsuit"). [Adv. Doc. No. 1, ¶ 14, p. 3 of 6]; [Adv. Doc. No. 1, Ex. No. 1]. The Plaintiff resolved the State Court Lawsuit on July 6, 2016, by paying in full the unpaid balance due under the Note of $12,136.80. [Adv. Doc. No. 9, Ex. No. 8].

On April 13, 2017, the Defendant, along with her husband, filed a Chapter 13 petition, thereby initiating the main Chapter 13 case. [Case 17-32295, Doc. No. 1]. On May 11, 2017, the Plaintiff filed a proof of claim in the main case, identifying the sum paid in the State Court Lawsuit on the Note as an outstanding debt owed to her by the Defendant (the "Debt"). [Adv. Doc. No. 9, Ex. 3].

The Plaintiff initiated this Adversary Proceeding by filing a complaint on July 30, 2017, seeking a determination that the Debt is nondischargeable. [Adv. Doc. No. 1, ¶ 7, p. 2 of 6]. The Plaintiff's Complaint requests a judgment declaring that the Debt is nondischargeable under 11 U.S.C. § 523(a)(2), (4), (6), and/or (8).[1] [Adv. Doc. No. 1, ¶ 7, p. 2 of 6]. On January 26, 2018, the Plaintiff filed her Motion for Summary Judgment, relating only to her claim that the Debt is nondischargeable under § 523(a)(8)(ii). [Adv. Doc. No. 9, ¶ 5, p. 2 of 15]. On February 16, 2018, the Defendant filed her Response opposing the Plaintiff's Motion for Summary Judgment. [Adv. Doc. No. 10]. This Court held a hearing on March 15, 2018, to listen to oral arguments of each party's counsel, and then took the matter under advisement. The Court now issues this

---

[1] Henceforth, any reference herein (i.e., §) refers to a section in 11 U.S.C., which is the United States Bankruptcy Code, and any reference to "the Code" refers to the United States Bankruptcy Code, unless otherwise noted. Further, any reference to "the Bankruptcy Rules" refers to the Federal Rules of Bankruptcy Procedure.

2

Memorandum Opinion explaining why it has decided to grant the Motion for Summary Judgment.[2]

## II. CONCLUSIONS OF LAW

### A. Jurisdiction, Venue, Constitutional Authority to Enter a Final Order, and Summary Judgment Standard of Review

1. Jurisdiction

This Court has jurisdiction over this dispute pursuant to 28 U.S.C. §§ 157(a) and 1334(b). Section 1334(b) provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 [the Bankruptcy Code], or arising in or related to cases under title 11." District courts may, in turn, refer these proceedings to the bankruptcy judges for that district. 28 U.S.C. § 157(a). In the Southern District of Texas, General Order 2012-6 (entitled General Order of Reference) automatically refers all eligible cases and proceedings to the bankruptcy courts.

This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) and by Rule 7001(b). This suit is also a core proceeding under the general "catch-all" language of 28 U.S.C. § 157(b)(2) because such a suit is the type of proceeding that can only arise in the context of a bankruptcy case. *See Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.)*, 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under § 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case.") (citation omitted). Preventing the discharge of a specific debt—here, the Debt—can only occur in a bankruptcy court. There is no state law equivalent of this action.

---

[2] In this Memorandum Opinion, the Court's findings of fact and conclusions of law are made pursuant to Bankruptcy Rule 7052. To the extent that any finding of fact is construed as a conclusion of law, it is adopted as such; and to the extent that any conclusion of law is construed as a finding of fact, it is adopted as such. The Court reserves the right to make additional findings as it deems appropriate or as any party may request.

3

2. <u>Venue</u>

Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a). 28 U.S.C. § 1409(a) provides that "a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending." The Debtor's main Chapter 13 case is presently pending in this Court; therefore, venue of this adversary proceeding is proper.

3. <u>Constitutional Authority to Enter a Final Order</u>

The Supreme Court's decision in *Stern v. Marshall* recognized certain limitations on bankruptcy courts' authority to enter final orders. 564 U.S. 462 (2011). Therefore, this Court has a duty to question its constitutional authority to enter a final order for any matter brought before it. The Court concludes that the facts in the pending suit are distinguishable from those in *Stern*, and that this Court has the authority to enter a final order in this suit.

In *Stern*, the debtor filed a counterclaim based solely on state law, and the resolution of this counterclaim did not resolve the validity, or invalidity, of the claim held by the defendant. *Id.* Here, the matter before the Court is not a counterclaim by the Debtor or the estate brought pursuant to state law, but rather is an adversary proceeding brought by a judgment creditor (i.e., the Plaintiff) against the Debtor to determine the nondischargeability of a specific debt pursuant to § 523(a)(8)(A)(ii)—an express provision of the Code. "Determining the scope of the debtor's discharge is a fundamental part of the bankruptcy process[,]" and was unchanged by the decision in *Stern*. *Farooqi v. Carroll (In re Carroll)*, 464 B.R. 293, 312 (Bankr. N.D. Tex. 2011). Therefore, this Court has the constitutional authority to enter a final order in this adversary proceeding.

In the alternative, this Court has the constitutional authority to enter a final order because the Plaintiff and the Defendant have expressly consented to adjudication of this dispute by this Court. *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1947 (2015) ("Sharif contends that to the extent litigants may validly consent to adjudication by a bankruptcy court, such consent must be expressed. We disagree. Nothing in the Constitution requires that consent to adjudication by a bankruptcy court be expressed. Nor does the relevant statute, 28 U.S.C. § 157, mandate express consent. . . ."). Indeed, the Plaintiff explicitly stated in her Original Complaint that "Plaintiff consents to the entry of a final order or a final judgment by this Court." [Adv. Doc. No. 1, ¶ 6, p. 2 of 6]. Approximately a month later, the Defendant filed her Original Answer to Complaint, and explicitly stated that "Defendant consents to the entry of a final order or a final judgment by this Court." [Adv. Doc. No. 7, ¶ 6, p. 1 of 3]. If this language does not constitute consent, then nothing does.

    4. <u>Summary Judgment Standard of Review</u>

Federal Rule of Civil Procedure 56(c) applies to this proceeding pursuant to Federal Rule of Bankruptcy Procedure 7056(c). Rule 56(c) provides that summary judgment is appropriate when the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party carries the burden of proof and must therefore show the absence of genuine material issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). All reasonable inferences are to be drawn in the non-moving party's favor. *See Baton Rouge Bldg. & Constr. Trades Council v. Jacobs Constructors, Inc.*, 804 F.2d 879, 881 (5th Cir. 1986) (per curiam) (holding that courts "must review the evidence and any inferences to be drawn therefrom in the light most favorable to the non-moving party").

## B. Nondischargeability under § 523(a)(8)(A)(ii)

Despite alleging several claims in the Original Complaint, the Plaintiff asks this Court only to resolve her claim under § 523(a)(8)(A)(ii) on this Motion for Summary Judgment. In its entirety, § 523(a)(8) balances two competing policy objectives: (1) the debtor's right to a fresh start; and (2) the need to protect the financial integrity of educational loan programs and to induce lenders to lend to students who cannot qualify for loans under traditional underwriting standards. *Brown v. Rust (In re Rust)*, 510 B.R. 562, 566 (Bankr. E.D. Ky. 2014); *Gorosh v. Posner (In re Posner)*, 434 B.R. 800, 803 (Bankr. E.D. Mich. 2010). The creditor bears the initial burden of proof that the debt is nondischargeable under § 523(a)(8). If this burden is met, the debtor can still discharge the debt if the debtor proves that repayment would constitute an undue hardship. *See Barrett v. Educ. Credit Mgmt. Corp. (In re Barrett)*, 487 F.3d 353, 358-59 (6th Cir. 2007); *Educ. Credit Mgmt. Corp. v. Savage (In re Savage)*, 311 B.R. 835, 839 (B.A.P. 1st Cir. 2004).

In 2005, Congress broadened the range of student loans that were to be considered nondischargeable under § 523(a)(8) by adding § 523(a)(8)(A)(ii) to encompass loans made by nongovernmental and profit-making organizations. *Benson v. Corbin (In re Corbin)*, 506 B.R. 287, 296 (Bankr. W.D. Wash. 2014). This provision makes nondischargeable "an obligation to repay funds received as an educational benefit, scholarship, or stipend[.]" 11 U.S.C. § 523(a)(8)(A)(ii). Because there is no requirement that the loan be directly tied to a government unit, § 523(a)(8)(A)(ii) has been more broadly applied to cases where third parties, not the government, is the party holding the debt. *See Essangui v. SLF V-2015 Trust (In re Essangui)*, 573 B.R. 614, 616-17 (Bankr. D. Md. 2017); *Dufrane v. Navient Sols., Inc. (In re Dufrane)*, 566 B.R. 28, 31-32 (Bankr. C.D. Cal. 2017); *Sensient Techs. Corp. v. Baiocchi (In re Baiocchi)*, 389

B.R. 828, 831-32 (Bankr. E.D. Wis. 2008). Thus, in order to obtain a judgment that a debt is dischargeable under § 523(a)(8)(A)(ii), the Plaintiff must prove: (1) an obligation to repay; (2) funds received for an educational purpose; and (3) standing to sue. The Defendant can still discharge the debt, however, if she proves undue hardship.

In the suit at bar, there is no dispute of material fact between the Plaintiff and the Defendant that there was an obligation on the part of the Defendant to repay the funds she received from THECB. [Adv. Doc. No. 7, ¶ 8, p. 2 of 3]. Similarly, there is no dispute that the loan proceeds the Defendant received from THECB were used for her education. [Adv. Doc. No. 7, ¶ 9, p. 2 of 3]. There is also no dispute that the Plaintiff was liable to THECB if the Defendant defaulted under the Note. [Adv. Doc. No. 7, ¶ 10, p. 2 of 3]. Further, nowhere in the Defendant's Answer to Complaint, or in the Defendant's Response to Plaintiff's Motion for Summary Judgment, is undue hardship alleged.

According to the Defendant, the only material dispute of fact before this Court on summary judgment is the proper title for the Plaintiff in this suit. The Defendant alleges that there are several titles that could be assigned to the Plaintiff: guarantor, co-maker, co-borrower, cosigner, surety, and accommodation party. [Adv. Doc. No. 10, p. 2 of 5]. The Defendant seems to contend that if the Plaintiff is a "co-maker" or "co-borrower," then she does not have standing to seek a judgment that the Debt is nondischargeable. However, at oral argument, the Defendant's counsel failed to cite one case supporting this argument as it relates to § 523(a)(8)(A)(ii). Additionally, in the Defendant's own Answer to the Original Complaint, the Defendant admitted that the Plaintiff was a "guarantor" by virtue of her admission in paragraph ten of her Answer [Adv. Doc. No. 9, Ex. No. 2, ¶ 10, p. 2 of 3]—thereby admitting that the Plaintiff is a "guarantor" and, accordingly, barring the Defendant from now arguing that there is

7

a genuine issue of material fact as to whether the Plaintiff is a "guarantor."[3] Moreover, in the loan documents signed by the Plaintiff, it is expressly set forth that her responsibility is that of a "Payment Guarantor/Cosigner." [Adv. Doc. No. 9, Ex. No. 3-1-A]. Further, in the loan documents, the obligations of the Plaintiff are expressly set forth in eight paragraphs under a heading entitled "Payment Guaranty"—language which clearly reflects that the Plaintiff is a "guarantor." As a guarantor and co-signer, this Court concludes that the Plaintiff is a party who has standing to sue the Defendant for reimbursement, as an accommodation party, because she paid the sums owed by the Defendant under the Note.

While there is no binding precedent addressing an accommodation party as relating to § 523(a)(8)(A)(ii), this Court finds persuasive two cases with legally similar principles to the suit at bar, and adopts their reasoning. First, *In re Corbin* addressed the issue of whether an obligation held by a non-debtor/co-signer of a student loan is nondischargeable under § 523(a)(8)(A)(i) and (ii). *In re Corbin*, 506 B.R. at 290. The plaintiff was the vice president of a company where the defendant worked. *Id.* The plaintiff cosigned the defendant's federally insured loans, while receiving no consideration in return. *Id.* The defendant defaulted on the loan, and the plaintiff subsequently paid off the loan in full.[4] *Id.* The plaintiff then sued in state court to recover the amount she paid. The state court entered a default judgment against the defendant for the balance of the loan, explicitly entering a finding of fact that the plaintiff

---

[3] *See* Federal Rule of Civil Procedure 8(b)(6), applicable to adversary proceedings under Federal Bankruptcy Procedure 7008, "[a]n allegation . . . is admitted if a responsive pleading is required and the allegation is not denied." Further, in her responses in paragraphs twelve and fourteen of her Answer, the Defendant fails to expressly deny the allegations set forth in the Complaint that the Plaintiff was the "Guarantor of the Note" and that the Plaintiff was also "the Guarantor remaining liable for any deficiency." [Adv. Doc. No. 9, Ex. No. 2, ¶¶ 12, 14]. Case law is clear that a defendant's failure to expressly deny a factual allegation in a complaint results in the allegation being deemed admitted. *See Hill v. Fritz (In re Fritz)*, No. 16-3030, 2017 WL 1229706, at *5 (Bankr. N.D. Tex. Apr. 3, 2017); *Citro-Rey S. de R.L. de C.V. v. L&M Cos., Inc.*, No. M-07-154, 2009 WL 10692862, at *2 (S.D. Tex. Oct. 13, 2009).

[4] As it turns out, the loan in question was not delinquent, but rather in a period of forbearance, and an error with billing caused the loan to become due. *In re Corbin*, 506 B.R. at 290. The court reached no conclusion about "whether and how [the Plaintiff's] payment of the Loan . . . should affect the outcome[.]" *Id.* at 298 n.6.

"signed the loan solely as an accommodation for the benefit of [the defendant] and received no proceeds or benefits" from the loan. *Id.* The defendant then filed for bankruptcy. The Bankruptcy Court for the Western District of Washington analyzed the plaintiff's right to seek a judgment that the debt was nondischargeable under § 523(a)(8), first finding that the plaintiff could not obtain a judgment that the debt was nondischargeable under § 523(a)(8)(A)(i). *Id.* at 295-96. However, in addressing whether the plaintiff could obtain a judgment that the debt was nondischargeable under § 523(a)(8)(A)(ii), the court reviewed in detail the broad reach of § 523(a)(8)(A)(ii), and how Congressional intent has been applied to protect creditors. *Id.* at 296. The court held that the plaintiff could indeed obtain a judgment that the debt was nondischargeable because:

> [T]he provision of an accommodation, in order to secure for a student funds for the purpose of paying educational expenses, gives rise to an obligation on the part of the debtor to repay funds received as an educational benefit once the co-signer is required to honor its obligation to pay the debt.

*Id.* at 297-98. Because of the factual and legal similarities to the present suit, this Court finds *In re Corbin* persuasive, and agrees with its holding that an accommodation party can pursue a suit for debt nondischargeability under § 523(a)(8)(A)(ii).

While the Plaintiff in the suit at bar—unlike the plaintiff in *In re Corbin*—did not work with the Defendant, the Plaintiff and the Defendant were both members of the same church congregation, and therefore—like the parties in *In re Corbin*—had known each other for some time. [Adv. Doc. No. 9, ¶ 8, p. 2 of 15]. Just like the plaintiff in *In re Corbin*, the Plaintiff in the suit at bar had no obligation to sign the loan documents, and she received no benefit from signing her name to these documents; rather, she was merely providing an accommodation for the needs

9

of the Defendant.[5] The loans in the present suit and *In re Corbin* were both clearly used for educational purposes. Finally, in both suits, neither defendant alleged that holding the debt nondischargeable would impose an undue burden on them. Because of the factual and legal similarities to the present suit, this Court finds *In re Corbin* persuasive and agrees with its holding that an accommodation party is entitled to recover the sums paid on behalf of the student/borrower/debtor. Accordingly, this Court concludes that the Plaintiff, as a guarantor, having paid the Debt to THECB, is now entitled to a judgment from this Court that the amount the Plaintiff paid constitutes a nondischargeable debt owed by the Defendant.

A second case with legal and factual similarities to the suit at bar is *In re Rust*. 510 B.R. at 562. In that case, the plaintiff signed a credit agreement that allowed the debtor/defendant to acquire funds to be used while attending the University of Southern Indiana. *Id.* at 565. The plaintiff signed the credit agreement as "Cosigner." *Id.* Over the next few years, the plaintiff received notifications that the defendant had failed to make timely payments on her loans. *Id.* The plaintiff made two payments on the loan balance before subsequently paying off the balance in full. *Id.* The plaintiff filed suit in state court, and recovered a default judgment against the defendant for the amounts paid on the loan. *Id.* The defendant filed a Chapter 7 petition, and the plaintiff filed a complaint to have the debt declared nondischargeable. *Id.* The bankruptcy court found the plaintiff to be an accommodation party under state law. *Id.* at 568-69. Additionally, the court held that by protecting the plaintiff's rights to seek reimbursement, its holding supported the Congressional intent of § 523(a)(8)(A)(ii). *Id.* at 572. Specifically, many lenders

---

[5] At oral arguments, Plaintiff's attorney conceded that *some* benefit could have been received on behalf of the Plaintiff, such as "enhanced friendship." These circumstances do not rise to the level of sufficient consideration as a matter of law. As one Texas court has stated: "'Love and affection,' although sufficient to convey property by gift, is . . . not considered valuable consideration." *Medina v. Internal Revenue Service*, No. 5:16-cv-90, 2017 WL 4227990, at *4 (S.D. Tex. Sept. 21, 2017) (citing *Glenney v. Crane*, 352 S.W.2d 773, 776 (Tex. Civ. App.—Houston 1961)); *see also* Kevin M. Teevan, *Conventional Moral Obligation Principle Limits Qualified Beneficiary Contrary to Case Law*, 86 Marq. L. Rev. 701, 730 (2003) (discussing that "love and affection had been disqualified as sufficient consideration for [various types of] contracts by the end of the Sixteenth Century") (footnote omitted).

10

would not provide loans without the backing of an accommodation party who would guarantee the debt. Thus, acting as an accommodation party supports the Congressional intent of allowing educational loans to be available to those who might not be able to get them on their own. *Id.* Because accommodation parties support the Congressional intent coinciding with the broadening of § 523(a)(8) to include § 523(a)(8)(A)(ii), the court found the debt to be nondischargeable. *Id.*

Like *In re Corbin*, *In re Rust* is factually and legally similar to the suit at bar. As in *In re Rust*, the Plaintiff in the present suit signed the loan document as a guaranto/cosigner, and repaid a debt owed once the Defendant defaulted. Additionally, the Plaintiff is an accommodation party under Texas law. *See Faulkner v. Mikron Indus., Inc. (In re Heritage Org., L.L.C.)*, 354 B.R. 407, 421 (Bankr. N.D. Tex. 2006) ("Texas courts look to two primary factors in determining whether a party has signed for accommodation: (1) the intent of the parties to the instrument, and (2) whether the party claiming accommodation party status received a direct benefit from execution of the instrument."). Under the Texas Business and Commerce Code, an accommodation party is one who "signs the instrument for the purpose of incurring liability on the instrument without being a direct beneficiary of the value given for the instrument." *Id.* at 421 (quoting Tex. Bus. & Comm. Code Ann. § 3.419(a) (Vernon 2002 & Supp. 2006)). As in *In re Rust*, the Plaintiff here signed the instrument and incurred guarantor liability under the Note, while receiving no benefit or consideration from the execution of the instrument.[6] The purpose of the Plaintiff in being an accommodation party was to support the Defendant in obtaining a student loan that she might not have procured without the Plaintiff's guaranty. Because the Plaintiff was an accommodation party, and the purpose of her signing the loan document was to aid in facilitating the Defendant's receiving a student loan, as in *In re Rust*, her right to request and obtain a judgment of nondischargeability falls within the broad Congressional intent of §

---

[6] *See supra* note 4.

523(a)(8)(A)(ii). Because of the factual and legal similarities to the present suit, this Court also finds *In re Rust* persuasive, and agrees with its holding that an accommodation party is entitled to reimbursement after paying the debt on the primary obligor's behalf. Therefore, in the suit at bar, this Court reiterates that the Plaintiff, as a guarantor, having paid the Debt to THECB, is now entitled to a judgment that the amount the Plaintiff paid constitutes a nondischargeable debt owed by the Defendant pursuant to § 523(a)(8)(A)(ii).

The Defendant, however, argues the suit at bar is more similar to *In re Posner*. 434 B.R. at 800. The *In re Posner* court found that a plaintiff who cosigned loan notes was not a lender, but rather was a co-borrower. *Id.* at 803. Because the plaintiff was a co-borrower, the court found that the plaintiff was not able to "shoe-horn her status as a co-borrower into some other status which would protect Plaintiff's claim against Defendant from discharge." *Id.* However, *In re Posner* relied on two cases, both of which were factually different from the case before it, and the case before this Court. *Id.*

*In re Posner* relied on two cases, *Resurrection Med. Ctr. v. Lakemaker (In re Lakemaker)*, 241 B.R. 577 (Bankr. N.D. Ill. 1999) and *Sante Fe Med. Servs., Inc. v. Segal (In re Segal)*, 57 F.3d 342 (3d Cir. 1995), both of which involved plaintiffs who, in the course of providing a benefit to the employee, acquired the student debt of the employee. *In re Posner*, 434 B.R. at 803-04. The courts in these cases found that the plaintiffs were not educational lenders, and thus were not eligible to obtain a judgment that the debts of the students/debtors were nondischargeable under § 523(a)(8). *Id.* at 804. *In re Posner* followed a similar rationale, and held that the plaintiff was not a lender, but rather a co-borrower, who had direct obligations to the original lender, and who was not entitled to the protections under § 523(a)(8)(A)(i). *Id. In re Posner* never analyzed the plaintiff's claim as it relates to § 523(a)(8)(A)(ii), the broader of

the two subsections of § 523(a)(8)(A). Instead, it only discusses § 523(a)(8) as a whole, briefly mentioning that the "Plaintiff cannot demonstrate that she is a lender within the meaning of § 523(a)(8)(A)(I) [sic]."[7] *Id.* However, nowhere in the text of § 523(a)(8) does the word "lender" appear. *In re Posner* used "lender" to address the Congressional intent of the Section to "principally protect[] government entities and non-profits-*places which lend money or guarantee loans to individuals for educational purposes from bankruptcy discharge.*" Id. at 803 (citing *Tift Cty. Hosp. Auth. v. Nies (In re Nies)*, 334 B.R. 495, 501 (Bankr. D. Mass. 2005) (emphasis in original)). Because *In re Posner* never addressed the Congressional intent of § 523(a)(8)(A)(ii), it falls short of the analysis of *In re Corbin*, which highlights how, by allowing for accommodation parties to come within the universe of parties who can bring nondischargeability complaints, it actually *protects* government entities and non-profits. If the *In re Posner* court had done a § 523(a)(8)(A)(ii) analysis, it likely would have held similar to *In re Corbin*, *In re Rust*, and this Court, agreeing that Congressional intent was supported. For these reasons, this Court finds that the Defendant's reliance upon *In re Posner* is misplaced, and instead agrees with the reasoning under *In re Corbin* and *In re Rust*.

In sum, in the suit at bar, because there is no genuine issue as to any material fact regarding the nature of the Debt incurred, its educational purpose, or the Plaintiff's status as a guarantor/co-signer/accommodation party, this Court concludes that the Plaintiff is entitled to a summary judgment that the Debt is nondischargeable under § 523(a)(8)(A)(ii).

## C. No Award of Attorney's Fees

In addition to the recovery of the $12,136.80, plus prejudgment interest, the Plaintiff also asks this Court for the award of reasonable and necessary attorney's fees for the prosecution of

---

[7] *In re Posner* cited to "§ 523(a)(8)(A)(I)," however, § 523(a)(8)(A) uses lowercase Roman numerals to address further subsections. This Court thus construes "§ 523(a)(8)(A)(I)" to mean § 523(a)(8)(A)(i).

this Adversary Proceeding. The American Rule is the bedrock principle of our country's court system, where each litigant pays their own attorney's fees, win or lose, unless a statute or contract provides otherwise. *Baker Botts L.L.P. v. ASARCO LLC*, 135 S. Ct. 2158, 2164 (2015). The American Rule is to be followed "absent explicit statutory authority" that is "specific and explicit" as to the allowance of attorneys' fees. *Id.* The Plaintiff cites no explicit statutory authority or any language in the loan document supporting an award of attorney's fees under § 523(a)(8)(ii) in her Original Complaint or Motion for Summary Judgment. Accordingly, the Court denies the Plaintiff's request to require the Defendant to pay her attorney's fees and costs.

### III. CONCLUSION

Defendant owes the Plaintiff a debt of $12,136.80, plus prejudgment interest from the date the petition was filed (i.e., April 13, 2017) to the date of entry of judgment (i.e., March 23, 2018), based on this Court's determination that the Plaintiff is an accommodation party.[8] This debt is nondischargeable pursuant to § 523(a)(8)(A)(ii) because the debt is an obligation to repay borrowed funds received by the Defendant as an educational benefit, and the Defendant has not established that this repayment would cause her an undue hardship. Finally, because there is no legal authority, the Court denies the Plaintiff's request that the Defendant be required to pay for the attorney's fees and expenses incurred by the Plaintiff.

---

[8] State law is an appropriate source of guidance, since there is no federal statute governing a prejudgment interest under § 523(a)(8)(A)(ii). *See West vs. Hsu (In re Advanced Modular Power Sys., Inc.)*, 413 B.R. 643, 685 (Bankr. S.D. Tex. 2009) (stating that "State law is an appropriate source of guidance, since there is no federal statute governing prejudgment interest"), *aff'd sub nom. Hsu v. West*, No. ADV 08-03177, 2009 WL 7760300 (S.D. Tex. Dec. 30 2009). Under Texas law, the rate for prejudgment interest is the prime rate as published by the Board of Governors of the Federal Reserve System. Tex. Fin. Code Ann. § 304.003(c). However, the rate shall be set at 5% if the current prime rate is less than 5%. *Id.* at § 304.003(c)(2). The current prime rate is 4.5%, so this Court will apply a 5% interest rate to prejudgment interest. Federal Reserve Selected Interest Rates, https://www.federalreserve.gov/releases/h15/ (last visited March 23, 2018).

An order consistent with this Memorandum Opinion will be simultaneously entered on the docket.

Signed on this 23rd day of March, 2018.

Jeff Bohm
United States Bankruptcy Judge